Neel, J.
In these consolidated appeals[2] under G.L.c. 40A, plaintiffs allege that two decisions of defendant Wayland Planning Board (“Board”) improperly amend a 1992 conservation cluster special permit by allowing defendant B.T. Realty Trust (“Trust”) to construct a single family home in a location on the subject lot which is different from that originally approved, and which is unacceptably close to plaintiffs’ house on an abutting lot.
Case No. 99-5187 challenges a decision of the Board dated October 5, 1999 (“the October 1999 Decision”). Case No. 00-1076 challenges a decision of the Board dated December 13, 1999 (“the December 1999 Decision”). The consolidated cases were tried on November 6-7, 2000. For the reasons set forth below, the October 1999 Decision is affirmed, and the December 1999 Decision is vacated.
FINDINGS OF FACT
On the basis of the credible evidence at trial and inferences reasonably drawn therefrom, I find as follows.
On September 4, 1992, the Board issued and filed with the Town Clerk the “Lincoln View Estates Conservation Cluster Special Permit Decision” (“1992 Decision”) and the accompanying “Conservation Cluster Development Plan” (“Subdivision Plan”).
The Town of Wayland Zoning Bylaw (“Bylaw”) provides for conservation cluster developments to promote efficient use of land combined with preservation of open land for conservation and other purposes. Bylaw, Section IX A.
The 1992 Decision created seven “building lots,” identified as Lots 14, 15, 16, 17, 18 19, and 20, and one area of approximately twenty-eight acres of permanently protected open space. Each building lot comprises at least 45,000 square feet, and has at least fifty feet of frontage. The land subject to the Subdivision Plan falls within Residence Zone 60,000 square feet210 feet Front, and Residence Zone 40,000 square feetl80 feet Front. Absent the 1992 Decision, the building lots would be controlled by those Residence Zone restrictions. Lots 16 and 17 are in the 60,000 square foot district.
The 1992 Decision provides, at B.7., that
[t]he front, side, and rear yards of each lot are shown on the Plan by dashed lines indicating the area within which any proposed building may be built. Except as specifically waived herein, all proposed dwellings and accessory buildings shall be set back at least fifty feet from the perimeter of the tract and at least fifteen feet from any open land.
The 1992 Decision exempted the land subject to the Subdivision Plan from the lot area, frontage, yard, setback, and width requirements of Section IX of the Bylaws, subject to the waivers, conditions, and limitations stated in the 1992 Decision.
Waivers granted the developer include a waiver from a conservation cluster regulation requirement that there be a fifty foot wide buffer strip around the perimeter of the tract; specifically, the Board voted to “allow existing house on Lot 16 to be within" the buffer, because that house “is a pre-existing, non-conforming structure.” 1992 Decision at E.2.
The Board noted that “the approximately 7-foot setback of the existing house on Lot 16 is a pre-existing, non-conforming condition . . . which, according to the Zoning Enforcement Officer, is permitted to continue under the Zoning By-Laws. However, this house and its lot must comply with all other zoning requirements.” Id. at G.
The Board provided that “the owner/developer of each lot shall submit site development and house plans to the Planning Board for its approval prior to undertaking any work on the lot,” id. atl.l.d., and that “(e]ach house (except the house on Lot 16) shall include properly designed leaching pits to recharge all of the run-off generated from the roofs of the houses in a 100-year storm.” Id. at I.l.e.
The Board also provided that;
1.10. Except as specifically granted by waiver above, no proposed structure shall be erected on any of the lots outside of the dashed lines on the Plan indicating front, side, and rear yards, and the 50’ buffer; and the existing structures shown on Lot 17 shall be removed.
*430 1.12. The development shall be constructed in accordance with this decision, the approved Application and Plan, and all other applicable laws, by-laws, and regulations.
1.14. The special permit granted herein shall lapse if substantial construction has not begun within eighteen months of the date hereof, except for good cause. . .
Substantial construction on the conservation cluster development permitted by the 1992 Decision began within eighteen months of the date thereof, satisfying the requirement of Section 1.14.
The Subdivision Plan, Sheet 3 of 5 (Tr. Ex. 2), depicts the seven numbered building lots, and as to each a “proposed house location," except for Lot 16 which shows “House #223" (the then-existing house). Sheet 3 bears several "Notes," including the following: “Proposed house locations shown for informational purposes only. Exact locations and dimensions, to be determined by future owners.”
The “proposed house location” shown on Sheet 3 for Lot 17 appears at the rear (southern) end of the property, at the beginning of the fifty foot buffer. In December 1994, plaintiffs purchased Lot 17, which abuts Lot 16. At the time of the purchase, plaintiffs were familiar with the 1992 Decision and the Subdivision Plan. The actual location of the house which plaintiffs built on Lot 17 is toward the front (northern) end of the property.
In 1999, Michael and Debbie Macrides, then the owners of Lot 16, filed a special permit application to modify the 1992 Decision so as to permit the razing of the existing house located within the fifty foot buffer, and the construction of a new dwelling in the center of Lot 16. Their application and supporting materials included a “Site plan . . . dated December 1998, with revisions through September 16, 1999,” October 1999 Decision at 1, showing the precise location of the proposed house on Lot 16 (“the September 1999 Site Plan”).
On October 5, 1999, after notice and hearing, the Board issued the October 1999 Decision approving the proposed amendment to the 1992 Decision.
Shortly thereafter, the Trust purchased Lot 16.
The October 1999 Decision modified the 1992 Decision by:
1. modifying the 1992 Subdivision Plan to reflect the new proposed building on Lot 16;
2. modifying that Subdivision Plan “to note that the illustrated existing structure shall be razed upon the issuance and approval by the Planning Board of a site plan illustrating the construction of an alternative single-family dwelling on the subject lot in conformance with all setbacks and all other conditions of this as well as the original decision,” id. at 2;
3. requiring the restoration of the fifty foot buffer upon razing of the existing building, and prohibiting future construction thereon, “said restoration ... to be included in the submitted site plan to the Planning Board for their review and approval. . .,” id. at 3;
4. modifying the 1992 Decision by replacing its characterization of the existing building on Lot 16 as “a pre-existing, nonconforming structure” with the following: “the existing structure which has been given the status of a conforming structure per the benefit of the Special Permit granted September 4, 1992, shall be removed . . . because it will be more in keeping with the intent and purpose of the Zoning By-laws and specifically the conservation buffer,” id. at 3;
5. requiring that the Subdivision Plan reflect the location of the existing septic system on Lot 16 to show if it meets “all current setback requirements,” and further requiring the removal and replacement of that system if it does not. Id.
The Board heard and considered objections by plaintiffs and their attorney before voting the October 1999 Decision. The Board based that Decision on its findings that the Macrides’ application was in keeping with the purposes and intent of the 1992 Decision and of the Zoning By-laws, specifically as it pertained to the Conservation Cluster and setback requirements; that Lot 16 is designated in the 1992 Decision as a “building lot”: that Lot 16 meets the minimum frontage and area requirements of the 1992 Decision, and “is of a size and shape to accommodate a building site that is in keeping with the natural terrain and other features of the tract”; and that Lot 16 complies with the requirement of the 1992 Decision that each lot illustrate the area within which any proposed building may be built. Id. at 5.
After consideration of the evidence de novo, the Court agrees with each of the Board’s October 5, 1999 findings, and adopts them as findings herein.
While the Board’s approval of the Macrides’ application for amendment of the 1992 Decision was based in part on the September 1999 Site Plan, the October 1999 Decision also expressly contemplated that a subsequent, final site plan, reflecting compliance with the requirements of that decision, would be submitted for Board review and approval.
On December 1, 1999, the Trust submitted a modified sité plan revised through November 10, 1999 (“the November 1999 Site Plan”). The Trust contends that it made the revisions in part to accommodate plaintiffs’ earlier objections. The November 1999 Site Plan made at least one change, however, to which plaintiffs object. Instead of locating the proposed house on Lot 16 at a distance of approximately 28 feet *431 from plaintiffs’ lot line (as appears on the September 1999 Site Plan), the November 1999 Site Plan locates the house approximately eighteen feet from the lot line, or ten feet closer to plaintiffs’ lot line and house. Under the November 1999 Site Plan, the proposed house would sit approximately thirty to forty feet from plaintiffs’ house.
On December 13, 1999, without notice and public hearing, the Board issued its December 13, 1999 Decision approving the November 1999 Site Plan.
The plaintiffs will be affected by the proposed building on Lot 16 as follows. Grade level of the proposed building is ten feet higher than grade level of plaintiffs’ house. The proposed house will shade the plaintiffs’ house for up to several hours each day, depending on the season. The view from plaintiffs’ living and family rooms, and home office, will change from a view of open land to one of a large new house. The value of plaintiffs’ property, currently in excess of $700,000, will probably be diminished in a significant way if the current view of unimproved land from major rooms in their house is replaced by a view of a new structure some thirty to forty feet away.
RULINGS OF LAW
The parties have stipulated that plaintiffs are parties in interest entitled to notice under G.L.c. 40A, §11; accordingly, plaintiffs are presumed to be “persons aggrieved” within the meaning of G.L.c. 40A, §17. Watros v. Greater Lynn Mental Health & Retardation Ass’n, Inc., 421 Mass. 106, 111 (1995). Defendants challenge that presumption of standing.
The standard by which the Court is to determine standing is set forth in Marashlian v. Zoning Bd. Of Appeals of Newburyport, 421 Mass. 719, 721 (1996):
Only a “person aggrieved” may challenge a decision of a zoning board of appeals. G.L.c. 40A, Sec. 17... A plaintiff is a “person aggrieved" if he suffers some infringement of his legal rights .. . The injury must be more than speculative, Tsagronis v. Board of Appeals of Wareham, 415 Mass. 329, 335, 613 N.E.2d 893 (1993) (Abrams, J., dissenting), but the term “person aggrieved” should not be read narrowly ... Abutters entitled to notice of zoning board of appeals hearings enjoy a rebuttable presumption they are “persons aggrieved.” See Watros, supra at 111, 653 N.E.2d 589; Marotta, supra at 204, 143 N.E.2d 270. If standing is challenged, the jurisdictional question is decided on “all the evidence with no benefit to the plaintiffs from the presumption." Id. ... A review of standing based on “all the evidence” does not require that the factfinder ultimately find a plaintiffs allegations meritorious. To do so would be to deny standing, after the fact, to any unsuccessful plaintiff. Rather, the plaintiff must put forth credible evidence to substantiate his allegations. In this context, standing becomes, then, essentially a question of fact for the trial judge.
(Citations omitted as indicated.)
Assuming without deciding that defendant has rebutted plaintiffs’ presumption of standing, the Court concludes that plaintiffs have standing because they have established that the view from major rooms of their house “would be partially obstructed by construction on the locus and . . . the value of [their] property would be diminished.” Tsagronis v. Board of Appeals of Wareham 415 Mass. 329, 330 n.4 (1993).
The standard of review of the grant of a special permit is set out in Roberts v. Southwestern Bell Mobile Systems, Inc., 429 Mass. 478, 485-86 (1999):
On appeal to the Superior Court or Land Court, a judge determines the legal validity of a zoning board decision on the facts found by him; he gives no evidentiaiy weight to the board’s findings. Josephs v. Board of Appeals of Brookline, 362 Mass. 290, 295 (1972), and cases cited. Judicial review is nevertheless circumscribed: the decision of the board “cannot be disturbed unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary.” MacGibbon v. Board of Appeals of Duxbury, 356 Mass. 635, 639 (1970), citing Gulf Oil Corp. v. Board of Appeals of Framingham 355 Mass. 275, 277 (1969). On the other hand, the substantial evidence standard of review of an administrative record “goes to the reasonableness of what the agency did on the basis of the evidence before it.” United States v. Carlo Bianchi & Co., 373 U.S. 709, 715, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963).
The Trust, as the holder of the permit, had the burden of going forward and proving that a permit could lawfully be granted to it. It was not obliged to disprove every possible harm raised by plaintiffs. Tebo v. Board of Appeals of Shrewsbury, 22 Mass.App.Ct. 618, 626 (1986).
The criteria for granting a special permit are less stringent than those involved in an application for a variance. To support affirmance of the board’s decision, the findings of the Court must be adequate to permit or support a conclusion that the use permitted by the special permit was within the scope of both the applicable statutes and the provisions of the town’s zoning by-law. Kiss v. Board of Appeals of Longmeadow, 371 Mass. 147, 153-54 (1976). “If reasonable minds could differ on the seriousness of a problem in relation to the issuance of a special permit, it was the board’s decision, and not the court’s, which was controlling.” ACW Realty Management, Inc. v. Planning Bd. Of Westfield, 40 Mass.App.Ct. 242, 247 (1996), quoting Kinchla v. Board of Appeals of Falmouth, 11 Mass.App.Ct. 927 (1981).
Where, as here, a zoning board acts to amend a previously granted special permit, the board
*432 “may not make a substantive amendment which changes the result of an original deliberate decision, or which grants relief different from that originally granted, without compliance with the relevant notice and hearing requirements” (citations omitted). Huntington v. Zoning Bd. of Appeals of Hadley, 12 Mass.App.Ct. 710, 714 n. 4 (1981), quoting Selectmen of Stockbridge v. Monument Inn, Inc., 8 Mass.App.Ct. 158, 164, (1979).
Tenneco Oil Co. v. City Council of Springfield, 406 Mass. 658, 659-60 (1990).
G.L.c. 40A, §9, authorizes cluster developments by issuance of a special permit. “Cluster development” is defined in the statute as follows:
“Cluster development” means a residential development in which the buildings and accessory uses are clustered together into one or more groups separated from adjacent property and other groups within the development by intervening open land. A cluster development shall be permitted only on a plot of land of such minimum size as a zoning ordinance or by-law may specify which is divided into building lots with dimensional control, density and use restrictions of such building lots varying from those otherwise permitted by the ordinance or by-law and open land. Such open land when added to the building lots shall be at least equal in area to the land area required by the ordinance or by-law for the total number of units or buildings contemplated in the development.
In this case, contrary to plaintiffs’ contention, the dimensional changes approved in the October 1999 Decision, reflected in the September 1999 Site Plan, do not require variances as opposed to amendments to a special permit. The special permit process may be used generally to fine-tune dimensional standards, Emond v. Board of Appeals of Uxbridge, 27 Mass.App.Ct. 630, 632-36 (1989), and specifically to set alternative dimensional standards under the cluster development authority of G.L.c. 40A, §9.
The parties stipulate that the Board’s October 1999 Decision followed a duly noticed public hearing on the Macrides’ application to amend the 1992 Decision so as to permit them to build a house on Lot 16 in a different location from that of the existing house. In view of that fact, and upon the findings set out above, the Court concludes that the Board acted within its authority in amending the 1992 Decision by issuing the October 1999 Decision.
The parties also agree that the December 1999 Decision approving the November 1999 Site Plan was not taken pursuant to a duly noticed public hearing. The November 1999 Site Plan contains several changes to the September 1999 Site Plan, including a repositioning of the proposed house ten feet closer (from approximately 28 feet to approximately 18 feet) to plaintiffs lot line. That change, which reduces the distance between the proposed house and the lot line by more than a third, constitutes a substantial change in the September 1999 Site Plan upon which the October 1999 Decision was in part based. Approval of such a substantial change required notice and hearing. See Chambers v. Building Inspector of Peabody, 40 Mass.App.Ct. 762, 766-67 (1996):
The size and location upon the locus of the proposed building was an issue of substance for both the [permit-granting authority], in its decision whether to issue a discretionary special permit, and for abutters, such as the plaintiff, who were required by law to receive notice of the public hearing on the special permit application. The location of the improvements on the site, their mass, ground coverage, and distance from lot lines are of particular and prime importance to neighboring property owners ... If á developer wishes to undertake significant modifications to a site plan, it is required to submit a revised site plan to the permit-granting authorify for consideration at another public hearing.
Accordingly, the December 1999 Decision is invalid.
ORDER FOR JUDGMENT
For the reasons stated above, it is hereby ORDERED-that, in consolidated action No. 99-5187, judgment shall enter for defendants: and that, in consolidated action No. 00-1076, judgment shall enter for plaintiffs vacating the December 13, 1999 “Decision of Approval” by defendant Town of Wayland Planning Board.

 Benjamin T. Stevens and Thomas E. Finelli, Trustees of B.T. Realty Trust, intervened and were substituted as party defendants for two of the original defendants in No. 99-5187, Michael G. and Debbie B. Macrides. The two consolidated actions are thus identically captioned.